# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JAMES A. RUSSELL,

        Petitioner,       :     Case No. 3:24-cv-001

  - vs -                               District Judge Thomas M. Rose
                                            Magistrate Judge Michael R. Merz

WARDEN, Marion Correctional
  Institution,

                                             :

        Respondent.

---

**ENTRY AND ORDER ADOPTING, IN FULL, THE MAGISTRATE'S REPORT AND RECOMMENDATIONS (DOC. NO. 22) AND SUPPLEMENTAL REPORT AND RECOMMENDATIONS (DOC. NO 34); OVERRULING PETITIONER JAMES A. RUSSELL'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATIONS (DOC. NO. 27), AND PETITIONER JAMES A. RUSSELL'S OBJECTIONS TO MAGISTRATE'S SUPPLEMENTAL REPORT AND RECOMMENDATIONS (DOC. NO. 37); AND, TERMINATING THIS MATTER ON THE COURT'S DOCKET**

---

      This habeas corpus case, brought *pro se* by Petitioner James A. Russell pursuant to 28 U.S.C. § 2254, is before the Court on Petitioner's Objections (Doc. No. 37) to the Magistrate Judge's Supplemental Report and Recommendations (the "Supplemental Report") (Doc. No. 34) after recommittal (Doc. No. 28) of the case upon Petitioner's Objections (Doc. No. 27) to the Magistrate Judge's original Report and Recommendations (the "Report") (Doc. No. 22).

      As required by 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b), the Court has reviewed *de novo* the Report and Supplemental Report with particular attention to those portions objected to by Petitioner. Having done so, the Court finds the objections are without merit and they are **OVERRULED** for the reasons set forth below.

I. **Litigation History**

This is Petitioner's second habeas corpus case attacking his conviction for the murder of Phillip Troutwine and associated crimes which occurred in Montgomery County, Ohio, sometime prior to September 25, 2004. On that date Troutwine's body was discovered in the trunk of his car which was found parked in the parking lot of an apartment complex in West Carrollton, Ohio. Troutwine had been shot once in the head . . . . *State v. Russell,* 2007-Ohio-137, ¶ 8 (Ohio App. 2d Dist. Jan. 12, 2007) ("*Russell I*"). According to testimony given at trial by Candace Hargrave, she lived at Apartment 3, 2080 Auburn Avenue, in Dayton, Ohio with Russell. She provided sex for money at that location and had made an arrangement to do so with Troutwine on the morning of September 1, 2004. Before he arrived, she and Russell changed the plan such that Russell was to rob Troutwine when he arrived. In the course of that robbery, Russell shot and killed Troutwine. He and Hargrave then conspired to dispose of the body, clean up the blood, and flee, which they did, eventually being arrested in Los Angeles. *Id.*

Upon being returned to Dayton, Russell was indicted on one count of aggravated robbery in violation of Ohio Revised Code § 2913.01(K), with a three year firearm specification; one count of murder in violation of Ohio Revised Code § 2911.01(A)(1), with a firearm specification; one count of tampering with evidence in violation of Ohio Revised Code § 2921.12(A)(1); one count of grand theft in violation of Ohio Revised Code § 2913.02(A)(1), also with a firearm specification; one count of gross abuse of a corpse in violation of Ohio Revised Code § 2927.01(B); and one count of having a weapon while under disability in violation of Ohio Revised Code § 2923.13(A)(2). A jury convicted Russell on the first five counts and the trial judge convicted him on the weapons count. The court imposed an aggregate sentence of forty and one-half years to life in prison.

On direct appeal, the Second District affirmed. *Russell I, supra.* The Ohio Supreme Court then declined jurisdiction over a further appeal. *State v. Russell*, 114 Ohio St. 3d 1411 (2007). In the meantime, Russell applied to reopen his direct appeal. He alleged he should have been granted a mistrial after the verdict form for the weapons count was incorrectly given to the jury; the Second District agreed. On re-trial, the jury convicted him on the same five counts[1] and an identical sentence was imposed.

On September 16, 2015, Russell filed his first petition in this Court in Case No. 3-15-cv-331. This Court granted the writ conditioned on the State's giving Petitioner a new appeal in which the issue to be decided was whether Petitioner's aggravated murder and aggravated robbery convictions should have been merged as allied offenses of similar import under Ohio Revised Code § 2941.25 (Order, Doc. No. 62 in Case 3:15-cv-331). The Sixth Circuit affirmed. *Russell v. Wainwright,* 811 Fed. Appx. 922 (6th Cir. Apr. 28, 2020). This Court then certified the result to the Second District and closed the first habeas case. (Doc. No. 73 in Case No. 3:15-cv-331).

Russell then received his new appeal in the Second District. That court concluded that Russell's murder and aggravated robbery convictions were properly merged under Ohio Revised Code § 2941.25 as allied offenses and therefore it was not ineffective assistance of appellate counsel to fail to make that claim (Opinion and Entry of June 21, 2022, State Court Record, Doc. No. 6-1, Ex. 93). Russell filed his appeal from this decision on August 4, 2022. (*Id.* at Ex. 94, PageID 1600.) The Ohio Supreme Court again declined jurisdiction. (*Id.* at Ex. 96.)

II.     **Analysis**

The Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214) ("AEDPA") enacted a statute of limitations applicable to habeas corpus cases,  28 U.S.C. §

---

[1] The judge's verdict on the weapons count was undisturbed.

3

2244(d). That statute allows a petitioner one year from the date his conviction becomes final on direct appeal to file in federal court. The running of the statute is tolled by the pendency of a properly filed state collateral attack on the judgment of conviction. 28 U.S.C. § 2244(d)(2).

Russell filed the Petition in this second habeas corpus case when he deposited it in the prison mailing system on December 21, 2023 (Petition, Doc. No. 1, PageID 46). Asked at ¶ 18 of the standard form for § 2254 Petitions to explain why his Petition was timely, Russell left the question blank. (*Id.* at PageID 44-45.) Respondent then pleaded the bar of the statute of limitations in his Return (Doc. No. 7, PageID 1726).

Russell responded to this limitations defense in his Traverse, writing:

> [T]he one year limitation period in the instant case did not start to run on May 10, 2022, August 8, 2022, or August 9, 2023, after the Ohio Supreme Court declined jurisdiction over the Petitioner's appeal. Because the appeal before the Ohio Supreme Court filed March 10, 2022, was still pending before the state court and before the Petitioner's sentence became final §2244(d)(1)(A).
>
> The Petitioner untilized [sic] Ohio Appellate Procedural Rule App.R.26(B) on April 28, 2022, before the Ohio Supeme [sic] Court rendered it's [sic] judgment on September 27, 2022. [S]imply put, the Petitioner's 26(B) application was timely filed before the Ohio Supreme Court entered it's [sic] judgment on September 27, 2022. Therefore, the 26(B) post conviction tolled the one year statute of limitation. (State's exhibit 89, Case No.2022-0249, page ID#1557, and State's exhibit 92, Case No.CA29177, page ID#1581). *Hess v. Sec'y Dept of Corr,* 2017 U.S. App. LFXIS 27099, The one year limitation period is tolled during the time which a properly filed application for state post conviction relief or other collateral review is pending. *Smith v. Ohio*, 331 F.Supp.2d 605 (N.D. Ohio 2004). On June 21, 2022, the State Court of Appeal overruled the Petitioner's 26(B) post conviction application to reopen appeal (State's exhibit 93, page ID#1589). On August 4, 2022, the Petitioner timely filed an appeal to the Ohio Supreme Court (State's exhibit 94, page ID#1600). Not until September 27, 2022 did the Ohio Supreme Court decline jurisdiction over the appeal.(State's exhibit 96, Case No.2022-0947, page ID#1615).

4

> [T]he one year statute of limitation began to run on December 27, 2022-- (90) days after the Ohio Supreme Court declined jurisdiction over the timely appeal on September 27, 2022, [a]nd upon the expiration of the time to seek certiorari to the United States Supreme Court on December 27, 2022. *Isham v. Randle*, 226 F.3d 691 (6th Cir. 2000), section 2244(d)(1)(A) provides that the one year limitation period begins to run on the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review, the one year limitation period dose [sic] not begin to run until after time for filing a petition for writ of certioari [sic] with the United States Supreme Court has passed. *Williams v. Artuz*, 237 F.3d 147, 151 (7th Cir. 2001).
>
> [M]orover, because the 26(B) application to reopen is a part of the direct appeal process (pursuant to *Bronaugh v. Ohio, supra*), and Petitioner must first exhaust to the State Supreme Court before going to the United States Supreme Court. The Petitioner's conviction and sentence became final on December 27, 2022 and the petition for writ of habeas corpus was timely filed when the Petitioner delivered the petition to prison officials for mailing to the United States Clerk of Courts Office on December 21, 2023. (See. Affidavit). *Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001),*Bond v. Moore*, 6 309 F.3d 770, 774 (11th Cir. 2002), *Anderson v. Litgcher,* 281 F.3d 672, 675 (7th Cir. 2002), *Abela v. Martin,* 348 F.2d 164 (6th Cir. 2003).

(Traverse, Doc. No. 14, PageID 1791-92).

In the Report, the Magistrate Judge noted that Russell agreed the relevant statute was 28 U.S.C. § 2244(d)(1) which measures the limitations date from the date the conviction becomes final on direct appeal.  Russell's position depended, as the Report saw it, on Russell's claim that the tolling effect of § 2244(d)(2) continued for the ninety days thereafter when he could have sought a writ of certiorari from the United States Supreme Court or until December 27, 2022. However, the Report noted that this position depends on the 26(B) Application being part of direct review. The Report concluded

> It is not. The Sixth Circuit has held a 26(B) application is a request for collateral review.  *v. Wilson*, 426 F.3d 339 (6th Cir. 2005)(en banc), overruling *Bronaugh v. Ohio*, 235 F.3d 280 (6th Cir. 2000). Its status as a request for collateral review enables it to toll the statute

5

> while it is pending, but not during the period when a petitioner could apply for a writ of certiorari, that is, the ninety days after Ohio Supreme Court consideration. *Lawrence v. Florida,* 549 U.S. 327, 332 (2007).

*Bronaugh* was the authority on which Russell depended for the proposition that a 26(B) application was part of direct review. As the Magistrate Judge pointed out, *Bronaugh* was overruled by the *en banc* Sixth Circuit decision in *Lopez*. Based on that reasoning, the Report recommended concluding the Petition is barred by the statute of limitations and recommended its dismissal with prejudice.

Completely changing his timeliness defense, Petitioner then abandoned the 26(B) tolling claims and switched in his Objections to a claim that time was tolled by the pendency of his Petition for Writ of Prohibition or Mandamus. On his Motion, the Magistrate Judge ordered the record expanded to include those proceedings and Respondent did so (ECF No. 33). The Magistrate Judge then filed the Supplemental Report and Recommendations. He gave Russell the benefit of the doubt on the question whether prohibition was a possible avenue for collateral relief, but concluded the Petition was still untimely (Doc. No. 34, PageID 1909-10).

Russell again objects, arguing he is entitled to tolling during the forty-five days in which he could have appealed dismissal of the prohibition petition to the Ohio Supreme Court (Objections, Doc. No. 37, PageID 1914). This requires the Court to decide the question the Supplemental Report put to one side, to wit, whether the petition for writ of prohibition Petitioner filed is a "properly filed collateral attack on the judgment."

Even if the prohibition petition were a properly filed collateral attack, the tolling would not continue during the time an appeal could have been taken. *Lawrence v. Florida,* 549 U.S. 327, 332 (2007).

6

More fundamentally, however, the Court concludes Russell's petition for writ of prohibition was not a properly filed collateral attack on the judgment. The Supreme Court has unanimously held that collateral review means judicial review of a sentence in a proceeding that is not part of direct review. *Wall v. Kholi*, 562 U.S. 545 (2011). In his Writ of Prohibition Russell plainly sought judicial review of the sentence he was then serving and prohibition is not part of direct review of criminal judgments in Ohio which is limited to direct appeal to the Ohio Courts of Appeal and the Ohio Supreme Court.

The question then is how to interpret "properly filed." In interpreting a statute, a court should:

1. Decide what purpose ought to be attributed to the statute and to any subordinate provision of it which may be involved; and then

2. Interpret the words of the statute immediately in question so as to carry out the purpose as best it can, making sure, however, that it does not give the words either (a) a meaning they will not bear, or (b) a meaning which would violate any established policy of clear statement.

Hart and Sacks, THE LEGAL PROCESS (Eskridge & Frickey ed. 1994), p. 1169. The broad purposes of AEDPA were to protect the comity which is intended to exist between state and federal courts, to protect the finality of state court criminal judgments, but also to protect the constitutional interests of state defendants by requiring the federal courts to defer to state court judgments on the facts and conclusions on the constitutional rights invoked unless the final reasoned state court decision is unreasonable in light of the evidence presented or an unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d). The statute of limitations obviously protects the finality of state court judgments.

Given that understanding of intention behind AEDPA, federal courts regularly defer to state court decisions on whether a proceeding attacking a state court judgment has been properly

filed in the state court. State statutes of limitation on state remedies are required to be respected. *Artuz v. Bennett*, 531 U.S. 4 (2000). Likewise, state limitations on second or successive filings are applied to determine whether a collateral attack has been properly filed. *Williams v. Burket*, 670 F.3d 729 (6th Cir. 2012).

Here the Second District determined Russell's Petition for Prohibition was not properly filed because it failed to state a claim upon which relief could be granted (Decision and Final Judgment Entry, State Court Record, Doc. No. 33, Ex. 120). The court applied the standard Ohio precedent for dismissal for failure to state a claim under Ohio R. Civ. P. 12(b)(6), (*Id.* at PageID 1901, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975)). It expressly held that prohibition and mandamus were not available because review of the judgment in question could have been (and was unsuccessfully) sought on appeal. (*Id.* citing State *ex rel. Berger v. McMonagle,* 6 Ohio St.3d 28, 30, 451 N.E.2d 225 (1983).)

Because Russell's Petition for Prohibition or Mandamus was not a properly filed collateral attack on the judgment under which he is held, its pendency did not toll the statute of limitations. Therefore, there was no tolling effect during the time Russell could have appealed; the case law he cites in support of that proposition is inconsistent with controlling precedent, *Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005) (*en banc*), overruling *Bronaugh v. Ohio*, 235 F.3d 280 (6th Cir. 2000); *Lawrence v. Florida,* 549 U.S. 327, 332 (2007).

Accordingly, the Report (Doc. No. 22) and Supplemental Report (Doc. No. 34) are **ADOPTED**, in full; Petitioner's Objections thereto (Doc. Nos. 27 & 37) are **OVERRULED**; and, this action is hereby **DISMISSED WITH PREJUDICE**. Because reasonable jurists would not disagree with this conclusion, Petitioner is denied a certificate of appealability and the Court certifies to the Sixth Circuit that any appeal would be objectively frivolous and should not be

8

permitted to proceed *in forma pauperis*.  The Clerk is hereby directed to **TERMINATE** this matter on the Court's docket.

      **DONE** and **ORDERED** in Dayton, Ohio, this Friday, January 10, 2025.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE
